458

IN THE MATTER OF THE APPLICATION OF CHESTER MALINOWSKI, PETITIONER-APPELLANT, v. RAYMOND F. MALE, COMMISSIONER OF LABOR AND INDUSTRY OF THE STATE OF NEW JERSEY, AND TRUSTEE OF THE ONE PER CENT FUND, RESPONDENT-RESPONDENT.

CHESTER MALINOWSKI, PETITIONER-RESPONDENT, v. SALVATORE LINO, APPELLANT-RESPONDENT.

Hudson County Court
Law Division

Decided February 28, 1963.

*Mr. Joseph Ginsberg* argued the cause for petitioner-appellant (*Messrs. Schwartz & Horowilz,* attorneys).

*Mr. John C. Heavey, Jr.* for appellant-respondent Lino (*Messrs. Carpenter, Bennett and Morrissey,* attorneys).

*Miss Grace J. Ford* for respondent Commissioner Male (*Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney).

ROSEN, J. C. C. These two interrelated appeals arise from the same set of facts in a workmen's compensation case.

The petitioner appeals from a decision and order of dismissal, dated June 18, 1962, by respondent Commissioner Male denying him benefits from the One Per Cent Fund. *N. J. S. A.* 34:15–94 *et seq.* Appellant Lino appeals from an award dated June 20, 1962 in favor of petitioner for increased total disability. The following facts are not in dispute and the court adopts the same as its findings.

On June 30, 1952 petitioner Malinowski, then 67 years of age, suffered injuries as a result of a fall from a scaffold, which accident arose out of and in the course of his employment with the respondent Lino. Petitioner's claim petition alleged permanent disability resulting from the said accident.

On April 30, 1954 a judgment in favor of the petitioner and against the respondent was entered in the Division awarding temporary disability for a period of 16–2/7 weeks at $30 per week, or $488.58, and permanent disability compensation for 90% of total, or 405 weeks at $30 per week, amounting to $12,150.

Prior to the compensable accident the petitioner was suffering from the residual effects of traumatic incidents for which he had received approximately 10% of total for accidents occurring prior to June 30, 1952; he also had an arteriosclerotic condition prior to said date, which in no way was aggravated by the accident.

As the result of the accident of June 30, 1952 the petitioner suffered disabling conditions to the head which resulted in loss of hearing and injuries to the right shoulder, cervical spine and right chest, causing a disability of 90% of total.

The deputy director's pertinent findings which were incorporated by reference in the final judgment were:

"* * * It is quite obvious that this man is no longer an industrial working unit in the accepted sense of the word. * * * I have no hesitancy in finding * * * that this man today [April 30, 1954] is totally disabled. * * *

He [petitioner] had a pre-existing disability which has been assessed in the compensation court of at least 10 per cent of partial total * * * so that he [petitioner] was, to all intents and purposes, less than 100 per cent disabled at the time this accident occurred * * * so that from a consideration of all of these factors I find that as relates to this accident he deviates from the norm to the extent of 90 per cent partial total."

The judgment also provides that:

"By reason of said accident, petitioner suffered severe injuries and I am satisfied that petitioner is *totally disabled*. However, there is no question but that all of the petitioner's disability *cannot be attributable to this accident*, since the record indicates that the petitioner had received approximately 10 per cent of total for accidents occurring prior to June 30th, 1952, and also had an arteriosclerotic background prior to the said date, *which in no way was aggravated by this accident*." (Italics supplied.)

After all payments had been made in accordance with this award, petitioner instituted a proceeding against the One Per Cent Fund, *N. J. S. A.* 34:15–95 *et seq.* Respondent Lino was not a party to this proceeding. This phase of the case was tried before the Division on April 12, 1961. At the conclusion of the hearing, the compensation judge stated:

"In view of the testimony of Dr. Amdur he gave an increase of loss of hearing which loss of hearing was initially found to be causally related to the accidental episode of June 30, 1952, I will reserve decision in this Application and will direct counsel for the petitioner to file a claim for increased disability so that a determination may be made whether in fact the respondent in the last stated accident is chargeable for such increased loss of hearing."

Petitioner thereafter instituted proceedings for increased disability (*N. J. S. A.* 34:15–27) alleging "loss of hearing increased," which allegation respondent denied. The case was heard on two separate hearing dates, December 19, 1961 and April 17, 1962 by the same compensation judge who presided over the One Per Cent Fund hearing. By agreement, the testimony taken in the Fund proceeding was incorporated in the hearing for increased disability. In this hear-

ing Dr. Amdur testified on behalf of the respondent; in the Fund hearing he testified on behalf of the petitioner. In the Fund hearing he testified that the increased loss of hearing was attributable to the June 30, 1952 accident. In the increased disability proceedings, he stated that the increased loss of hearing was due to natural causes and not a progression due to the compensable injury. The judge of compensation, in making his observation of this obvious contradiction, stated that the doctor's "actual client's interests were not at stake, but in this proceeding the doctor's client's interest are at stake, and I am of the firm conviction that Dr. Amdur's testimony before me in this proceeding was influenced by consideration of his client's interest and not by the facts as they are." He thereupon held that:

"Since the respondent had previously paid compensation on the basis of 90 per cent of partial total disability, the only question for determination is, What is the extent of the increased disability?

Such extent I determine to be the difference between the loss of hearing of 33½ per cent in the left ear and 33 per cent in the right ear and 59 per cent in the right ear and 59½ per cent in the left ear, or an over-all increase of loss of hearing of 24 per cent in each ear. Such increase entitles the petitioner to receive additional compensation for the period of 48 weeks, at his compensation rate of $30 per week. However, since the respondent had previously paid compensation for a period of 405 weeks, and since total disability cannot exceed 450 weeks, I therefore find an extent of increased disability entitling the petitioner to an additional 45 weeks of compensation at $30 per week, amounting to $1,350.

Hence, since the respondent is responsible for the petitioner's total disability, the petitioner is likewise entitled to the extension of compensation payments beyond the 450 weeks for total disability, pursuant to the provisions of R. S. 34:15–12(b)."

The petitioner, at the time of the original hearing and judgment in 1954, was suffering from disabilities which were in no way related to the June 30, 1952 accident. The record is devoid of any claim or finding that the conditions from which the petitioner was suffering prior to the 1952 accident were in any way aggravated, activated or accelerated by the compensable injuries suffered on June 30, 1952. The injuries

which preexisted the June 30, 1952 incident were the subject of awards in the Division of approximately 10% of partial total. On April 30, 1954 the then deputy director found the petitioner "no longer an industrial working unit" and "totally disabled," and found against the respondent Lino for 90% of total.

*N. J. S. A.* 34:15–95 provides, *inter alia*, that:

"The sums collected under section 34:15–94 of this Title shall constitute a fund out of which a sum shall be set aside each year * * * from which compensation payments in accordance with the provisions of paragraph (b) of section 34:15–12 of this Title shall be made to persons totally disabled, as a result of experiencing a subsequent permanent injury under conditions entitling such persons to compensation therefor, when such persons had previously been permanently and partially disabled from some other cause; * * * provided further, however, that no person shall be eligible to receive payments from such fund:

(a) If the disability resulting from the injury caused by his last compensable accident in itself and irrespective of any previous condition or disability constitutes total and permanent disability within the meaning of this Title."

The history and purpose of this legislation are fully discussed in *Ratsch v. Holderman*, 31 *N. J.* 458, 463, 468 *et seq.* (1960), dissenting opinion by Justice Burling, and do not require repetition. Petitioner contends that he is entitled to recover from the Fund upon his showing (1) some pre-existing permanent partial disability, whether compensable or not; (2) a compensable partial permanent injury superimposed thereon, and (3) as a result of the compensable injury he became totally and permanently disabled. Subject to the statutory exclusion, *N. J. S. A.* 34:15–95 (a), (b), (c) and (d), this contention is correct.

In *Balash v. Harper*, 3 *N. J.* 437 (1950), the court said:

"The intent of the statute is to insure the employee full compensation where a compensable disability succeeds but has no causative connection with the results of a prior disability, the combination of the two leaving the employee permanently and totally disabled. The

intention is to relieve the employer ·of the undue burden of a prior disability, with which or its results, the disability arising in his employ has no causative connection.

The test of the applicability of the 'One Per Cent Fund' is (a) that an employee has become totally and permanently disabled when a compensable disability is superimposed upon a prior disability, whether compensable or not, and (b), that the prior disability is one for whose results the subsequent disability has not been a competent producing cause as by aggravation, activation or acceleration. If the last compensable accident produces an aggravation, activation or acceleration then any progression in the pre-existing condition is attributable and is part of the last compensable accident." (at *p. 442*)

■ Respondent Male suggests that the facts in this case bring petitioner within *N. J. S. A.* 34:15–95(a). He advances the thesis that "the compensable injury must not itself produce total disability." But this restrictive interpretation is not supported by the language of the statute. No person is eligible to receive payments from the Fund if the disability resulting from the injury caused by his last compensable accident in itself *"and irrespective of any previous condition or disability"* constitutes total and permanent disability. As was suggested in *Wexler v. Lambrecht Foods,* 64 *N. J. Super.* 489 (*App. Div.* 1960), certification denied 34 *N. J.* 326 (1961):

"In other words, reading paragraph (a) *in pari materia* with the remainder of the act and interpretive cases, it may· be concluded that if the later accident is a competent producing cause of the entire resulting disability, and the earlier condition is causally contributive to the later condition or accident *or* accelerated or aggravated thereby, the employer bears the full liability and the Fund is exempt."

■ It is uncontroverted that petitioner's disability resulting from the last compensable accident on June 30, 1952 did not in itself constitute total and permanent disability, but only 90% of total. Petitioner's earlier disabilities were not causally contributive to the later condition or accident, nor is it claimed that the previous conditions or disabilities were aggravated or accelerated by the last compensable accident. From the record it is apparent that the petitioner had suf-

fered successive accidents resulting in compensable injuries, each causing permanent partial disability, but taken in conjunction with the unrelated June 30, 1952 accident, cumulatively resulted in permanent total disability. The respondent employer in whose service the June 30, 1952 accident occurred should not be charged with the total disability when the accidental injuries, without the prior conditions, would not have rendered the employee totally disabled. *Mayti v. Male,* 59 *N. J. Super.* 478, 484 (*Cty. Ct.* 1960).

Respondent Male advances the postulate that even if petitioner did become permanently and totally disabled as a result of his last compensable accident "in combination with his prior disabilities" there is no recourse to the Fund. The reason proposed is that "no doubt that prior to the injury petitioner was a competent working unit," and therefore the employer is "wholly responsible for the total disability," citing *Wexler,* above.

The facts in *Wexler* are clearly distinguishable. On August 27, 1957 petitioner suffered a heart attack which arose out of and in the course of his employment. The effects of the coronary infarction sustained by the petitioner were superimposed upon pre-existing conditions which consisted of a moderately severe coronary thrombosis with infarction, which occurred in 1947 (recovery was good); in 1953 mild diabetes; in 1955 a transitory small stroke which disappeared in a few hours, and generalized arteriosclerosis. There was no dispute that the petitioner had become 100% totally and permanently disabled. The court held that "the accident acting upon underlying and *causally related* physical conditions turned him into a person incapable of pursuing any gainful occupation," and therefore, the employee's total disability was chargeable to the employer. As previously noted, in the present case it is admitted that the pre-existing conditions or disabilities were not causally contributive or related to the compensable accident.

Petitioner has proved a right of recovery against the Fund, *N. J. S. A.* 34:15–95. Respondent Male's order of dismissal

dated June 18, 1962 is reversed. The case is remanded for the purpose of determining the *quantum* of the award to which petitioner is entitled from the One Per Cent Fund.

The judgment of the Division of Workmen's Compensation dated June 20, 1962 is reversed.